Robinson, J.
This was an action to quiet title and to partition property described in the petition. The court of common pleas found for plaintiffs, plaintiffs in error here. The court of appeals upon appeal found for the defendants.
The questions:
1. Was the recital in the deed of the receipt of one dollar conclusive?
2. Did the deed of Henry Moore, Sr., to Ida C. Moore, Erma Moore, Harold Moore, Henry Moore, Jr., and Wilbur Moore, east upon the grantees a title by purchase or one by deed of gift?
3. Was the decree of the court in a divorce proceeding between Ida C. Moore and Henry Mooré, Sr., attempting to convey real estate to Ida C. Moore for life and remainder to Erma Moore, Asa Moore, Henry Moore, Jr., and Wilbur Moore, subject to the life estate of Henry Moore, Sr., effective to accomplish such transfer of title?
4. Were the quitclaim deeds of Asa Moore and Henrietta Thiessen Johnson to Henry Moore, Sr., releasing to him their right to inherit from him, effective to prevent their inheritance from Wilbur Moore?
The plaintiffs in error Henrietta Thiessen Johnson and Asa Moore, are, respectively, the daughter and son of Henry Moore, Sr., and Cornelia Moore, both deceased. The plaintiff in error George Mc-Clelland, is a grandson, the only surviving child of Alba Johnson, a deceased daughter of Henry and Cornelia Moore. The defendant in error Ida Moore is a second wife of Henry Moore, Sr., and survives him. The defendants in error Erma Moore Waters, *418 Harold Moore and Henry Moore, Jr., are the children of Henry Moore, Sr., and Ida Moore.
"Wilbur Moore, a son of Henry Moore, Jr., and Ida Moore, died intestate, unmarried, and without issue, and the whole controversy arises out of the character of his title to the separate tracts. If by purchase, it would descend to the brothers and sisters of the whole blood, under Section 8574, General Code. If by devise or deed of gift, it would descend to the brother and sisters of the whole and half blood of the ancestor, under Section 8573, General Code.
The 54-acre tract belonged to Henry Moore, Sr., at the time of his marriage with Ida C. Moore. After the birth of the children Ida C. Moore instituted proceedings in divorce against Henry Moore, which proceedings were settled, and concurrent with, and as a part of such settlement, Henry Moore executed a quitclaim deed of the 54 acres to Ida C. Moore for life, with remainder to their children, Erma, Harold, Henry and Wilbur, reserving to himself a life estate therein, the deed reciting “That I, Henry Moore, the Grant- or, for divers good causes and considerations thereunto moving, and especially for the sum of One Dollars ($1.00), received to my full satisfaction of Ida C. Moore, Erma Moore, Harold Moore, Henry Moore, Wilbur Moore and any child, the fruit of the present marriage relation between said Henry Moore and Ida C. Moore hereafter bom, the Grantees, have given, granted, remised,” etc.
The effect of such a recital in a deed upon the course of descent is no longer an open question in this state. This court in the case of Shehy v. Cunningham, 81 Ohio St., 289, held: “The consideration *419 clause in a deed of conveyance is conclusive for the purpose of giving effect to the operative words of the deed, hut for every other purpose it is open to explanation by parol proof and is prima facie evidence only of the amount, kind and receipt of the consideration. ’ ’ Had this court in that case defined its use of the word “operative” there would have been no occasion for further declaration upon that subject. A reading of the opinion, however, discloses that the former decisions of this court were there considered and adhered to and that the wording of the syllabus was designed and intended to be in harmony therewith, from which it is apparent that the court intended to and did include within “the operative words of a deed” those words which indicate the character of the title as affecting its course of descent.
In the case of Patterson v. Lamson, 45 Ohio St., 77, this court held:
“1. Under the statutes of descent and distribution, the course of descent of real estate is to be controlled by the legal title.
“2. Where the intestate’s title to real estate is free from controversy, in determining its course of descent and whether it is ancestral or non-ancestral property, the statutes of descent and distribution are not to be construed and administered upon equitable principles, but by rules of law.
“3. In determining, in such case, whether an instrument for the conveyance of land is a deed of gift or a deed of purchase, its recitals of the payment and receipt of the consideration are material; and a recital in such deed that the conveyance by the named grantor to the grantee is made in con *420 sideration of a specified sum of money received by such grantor from the grantee, so far concerns the operation and effect of the deed as that it is not competent to show, hy parol proof, that such instrument is, in fact, a deed of gift from a person not named in it, and that the named consideration was in fact paid by him.”
In the case of Groves v. Groves, 65 Ohio St., 442, this court held: “Where the consideration expressed in a deed of conveyance is a valuable one, the title comes by purchase, and it is not competent to show by parol, that in fact the title came by deed of gift, and thereby change the line of descent.”
We, therefore, have no hesitancy in reaching the conclusion that for the purpose of determining the course of descent the recital in the deed of the payment of a valuable consideration is conclusive, and that the title to the undivided one-fourth of the 54 acres came to Wilbur Moore by purchase, and, upon his death, intestate and without issue, it passed under Section 8574, General Code, to his brothers and sisters of the whole blood.
Coming to the consideration of the third question, the record discloses that in 1905 Ida C. Moore filed a second petition for divorce against Henry Moore, Sr., and upon hearing was granted a divorce, and that the court in that proceeding ordered that Henry Moore, Sr., “convey by good and sufficient deed the real estate above described [being two acres plus] to plaintiff for her natural life and the fee of said real estate to said children absolutely reserving in himself the use, possession and control of said property for his natural life time * * * And it is further ordered that upon failure of said Hen *421 ry Moore to execute said conveyance within five days from the entry hereof, that this decree shall operate as such conveyance.” Henry Moore, Sr., did not convey the real estate. Henry Moore, Sr., died testate, devising his real estate to Wilbur Moore.
Section 8034, General Code, provides: “The court may order either or both parents to support or help support such children, whoever be their custodian, and also may make any just and reasonable order or decree, permitting the parent who is deprived of such care, custody and control of children to visit and have temporary custody of them.”
Section 11987, General Code, provides: “The granting of a divorce and dissolution of the marriage in no wise shall affect the legitimacy of children of the parties thereto. The court shall make such order for the disposition, care and maintenance of the children, if any, as is just.”
Section 7997, General Code, provides: “The husband must support himself, his wife, and his minor children out of his property or by his labor. If he is unable to do so, the wife must assist him so far as she is able.”
The legal obligation of the parent to support his children extends to but not beyond each child’s majority. This court in the casé of West v. West, 100 Ohio St., 33, approved its former holding in the case of Marleau v. Marleau, 95 Ohio St., 162, wherein it declared “A proceeding for alimony does not invoke the equity powers of the court but is controlled by statute. The court is only authorized to exercise such power as the statute expressly gives, and such as is necessary to make its orders and decrees effective.”
*422 The legislature having imposed no obligation upon the parent beyond the majority of the children, the court was without power to create such obligation, was without power to do other than provide for the maintenance, care, education and custody of the children during minority, and was without power to make any order with reference to the children which was not for the purpose of maintenance, care, custody and control during minority.
That the order to convey the remainder of the real estate to the children in this case had no reference to maintenance is apparent from the fact that there was reserved, first, a life estate to Henry Moore, Sr., second, a life estate to Ida Moore; and while of course the court could not know that those life estates would not be extinguished during the minority- of the children, yet there is no attempt in the order to limit its application and operative effect to such contingency. The effect, and undoubted purpose of the order, was to direct the course of the succession to the title to the real estate after the death of the parents, and not to provide maintenance for the children during minority; it was beyond the jurisdiction of the court in that respect, was absolutely void, and for that reason.may be attacked in this or other collateral action.
As to the quitclaim deeds attempting to release the right to inherit from Henry Moore, Sr., it is sufficient to say that at the time these deeds were executed the grantors had neither a vested nor a contingent right in the estate they sought to relinquish, there was no subject-matter upon which the instruments could operate, and they were therefore void.
*423 The judgment of the court of appeals is affirmed as to the 54 56/100 acres, as described in the journal entry of the court of appeals as “Parcel No. One,” and is reversed as to the 2 37/100 acres of land described in the journal entry as “Parcel No. Two.” The cause in so far as it pertains to “Parcel No. Two ’ ’ is remanded to the court of appeals of Lorain county for further proceedings in accordance herewith.

Affirmed as to the fifty-four acres; reversed as to the two acres.

Johnson, Hough, Jones and Matthias, JJ., concur.